**BETHLEHEM STEEL CORPORATION, Petitioner,**

v.

**ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

**No. 81–1489.**

United States Court of Appeals, Third Circuit.

Argued Dec. 2, 1981.

Decided Feb. 4, 1982.

Blair S. McMillin, (argued), Harley N. Trice, II, Thomas L. Allen, Reed Smith Shaw & McClay, Pittsburgh, Pa., for petitioner; Curtis H. Barnette, Gen. Counsel, Brent W. Robbins, Sr. Atty., Bethlehem, Pa., of counsel.

Nancy E. Long (argued), Jose R. Allen, Land & Natural Resources Div., Dept. of Justice, Carol E. Dinkins, Asst. Atty. Gen., Christopher Herman, E.P.A., Washington, D.C., for respondent; Robert M. Perry, Gen. Counsel, E.P.A., Washington, D.C., of counsel.

Before ALDISERT, ROSENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

Parties to an agency proceeding generally must exhaust their administrative remedies before they can resort to the courts. In this case, a company that the Environmental Protection Agency charged with exceeding air pollution standards contends it should be excused from the exhaustion requirement. Since a statutory penalty accrues each day the alleged violation continues, the company fears that its potential financial liability may force it to accede to EPA rather than risk an unfavorable outcome after prolonged, good faith litigation. We do not consider this to be undue hardship because the sanction created by Congress was intended to take the profit out of pollution by recouping the economic benefit a firm obtains by violating Clean Air standards. Since the company has not yet completed proceedings before EPA, the petition for review will be dismissed as premature.

On February 2, 1981, EPA served Bethlehem Steel Company with a notice of noncompliance issued pursuant to § 120 of the Clean Air Act, 42 U.S.C. § 7420 (Supp.III

1979).  The notice cited Bethlehem for violating a mass emission rate limitation and an opacity limitation at Precipitator No. 2, which is an air pollution control facility regulating the discharge of particulate from the company's sinter plant in Bethlehem, Pennsylvania.  The emission standards, codified at 25 Pa. Code § 123.13(b) and § 123.41(1), were enacted by the Commonwealth of Pennsylvania as part of its federally approved State Implementation Plan in order to achieve compliance with national ambient air quality standards.  42 U.S.C. §§ 7409–7410.

EPA alleged that Bethlehem's sinter plant had violated the regulations on May 28 and September 10, 1980.  In addition, the notice stated:

> "It is the Agency's finding that sufficient action has not been taken by the Company at the subject facility to remedy the performance of the existing control devices as represented by the above referenced data.  As a result of this inaction it is further concluded that such performance in violation of the stated Pennsylvania rules and regulations is continuing."

The notice informed the company that it must either submit a penalty calculation or file a petition for reconsideration within 45 days.

Bethlehem responded to EPA on February 27, 1981, with a letter captioned "Application For Agency Relief From The Issuance Of A Notice Of Noncompliance."  Bethlehem asked for withdrawal of the notice because its issuance exceeded EPA's powers under § 120 of the Clean Air Act and its own regulations in five ways:

1.  The notice is based on events which occurred before the effective date of the regulations implementing § 120 and therefore is an impermissible attempt to give them retroactive effect.

2.  The statute's enforcement plan does not permit notices to be issued until 18 months after promulgation of the implementing regulations.  Since the regulations were not published until July 28, 1980, compliance would not be required until January 28, 1982 at the earliest.

3.  The notice was not issued within 30 days after discovery of noncompliance, as mandated by the statute.

4.  The findings of noncompliance are not supported by the record to which the notice refers.

5.  The notice conflicts with EPA's announcement that it would proceed first against sources that had never complied with the Clean Air Act.

EPA elected to treat Bethlehem's letter as a petition for reconsideration, and suggested that the company supplement its request with data about the compliance status of the sinter plant or its eligibility for an exemption.  Bethlehem did so on April 7, 1981, and on July 17, 1981, the Regional Administrator of EPA denied Bethlehem's request to withdraw the notice of noncompliance.  He did order a hearing, however, to decide whether the company's facility is violating applicable legal requirements and whether it is entitled to a *de minimis* exemption.  We have not been informed of the progress of that hearing.

Without waiting for a response to its first letter, Bethlehem filed this petition for review on March 30, 1981.  The company raises before us the same objections that it presented to EPA.  The agency's threshold argument is that the petition should be dismissed since Bethlehem failed to exhaust administrative remedies.

EPA emphasizes that issuance of a noncompliance notice is only the first step of a process determining whether § 120 penalties will be assessed.  As the agency sees it, judicial review is not available until—and unless—the administrative proceedings conclude with the assessment of a penalty.  Therefore, says EPA, the court should not intervene until after the agency completes its hearing on whether Bethlehem has complied with the requirements of the Act or qualifies for a *de minimis* exemption, and then only if a penalty is fixed.

Bethlehem responds that the exhaustion doctrine does not apply here because the five issues raised by its petition for review are not related to compliance or exemption

and therefore will not be considered during the administrative hearing. Accordingly, it is argued, the agency has already taken its "final action" with respect to the specific challenges raised here. Bethlehem also contends that the controversy is ripe for review because these issues are purely legal in nature, and the company is threatened by the penalties that began accruing upon receipt of the notice in February 1981.

■ We look first at the relevant part of the Act, since "the doctrine of administrative exhaustion should be applied with a regard for the particular administrative scheme at issue." *Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975). Section 120 was enacted in 1977 as an amendment to the Clean Air Act, 42 U.S.C. §§ 7401–7642 (Supp. I 1977) (amending 42 U.S.C. §§ 1857–1858a. (1976)). It assesses an administrative penalty against air polluters equal to the economic value the violator derives from continuing noncompliance after the date of notification by EPA. The statute directs that not later than six months after August 7, 1977, the Administrator shall promulgate regulations governing the procedures for assessment and collection of the noncompliance penalty. *Id.* at § 7420(a)(1)(A), § 7420(b).

The Administrator must send a notice to violators not later than 30 days after the agency discovers the noncompliance. *Id.* at § 7420(b)(3). Upon receipt of the notice, the offender must either calculate the penalty and payment schedule in accordance with a specified formula, or else submit a petition within 45 days challenging the notice of noncompliance or alleging entitlement to an exemption. *Id.* at § 7420(b)(4). The Administrator may exempt a source if he finds that a particular instance of noncompliance is *de minimis* in nature and duration. *Id.* at § 7420(a)(2)(C). The petitioner is entitled to a hearing on the record and a decision within 90 days. *Id.* at § 7420(b)(5). In addition, the Administrator is authorized to adjust the penalty or payment schedule if he finds after notice and a hearing that the proposal submitted by the violator does not satisfy the requirements of the statute. *Id.* at § 7420(b)(8).

Judicial review is provided by § 7420(e): "Any action pursuant to this section . . . shall be considered a final action for purposes of judicial review of any penalty under section 7607 of this title." A petition for review of "any rule issued under section . . . 7420 of this title, or any other nationally applicable regulations promulgated, or final action taken, by the Administrator under this chapter may be filed only in the United States Court of Appeals for the District of Columbia." *Id.* at § 7607(b)(1). However, attacks on "any order . . . under section 7420 of this title . . . or any other final action of the Administrator under this chapter . . . which is locally or regionally applicable may be filed only in the United State Court of Appeals for the appropriate circuit." *Id.* In either event, the court is barred from granting "any stay, injunctive, or similar relief before final judgment by such court in such action." *Id.* at § 7607(g).

The Administrator adopted the regulations mandated by § 7420(b) nearly two and one-half years after the six month period specified in § 7420(a)(1)(A)—on July 28, 1980, and with an effective date of October 27, 1980. 40 C.F.R. §§ 66.1–66.95. The regulations provide that alleged violators must be notified of their right to petition for a hearing at which they may challenge the finding of noncompliance or claim an exemption. *Id.* at § 66.12(a)(4). A source owner or operator whose penalty calculation has not been accepted by the Administrator may also petition for a hearing to challenge the agency's recomputation. *Id.* at § 66.52.

The regulations further provide that agency action shall be considered final for purposes of judicial review "only if all administrative remedies have been exhausted." *Id.* at § 66.81(b). This requirement is set out in detail:

"To exhaust administrative remedies a source owner or operator must first petition for reconsideration of the decision in question for reconsideration of the decision in question and, if unsuccessful after hearing or after denial of hearing, appeal

the decision in question to the Administrator. The action becomes final upon the completion of review by the Administrator and notice thereof to the owner or operator of the source."

*Id.*

In the leading case of *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–464, 82 L.Ed. 638 (1938), the Supreme Court referred to the "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."[1] As the Court explained in *McKart v. United States*, 395 U.S. 185, 194–195, 89 S.Ct. 1657, 1662–1663, 23 L.Ed.2d 194 (1969), it is more desirable to let the administrative process go forward without interruption than to permit the parties to petition the courts at various intermediate stages. In that way, the agency can develop the necessary factual background, apply any special expertise it might possess, and correct its own errors. This judicial forbearance demonstrates a proper respect for administrative autonomy and allows the agency to function more efficiently and responsibly. *See also Weinberger v. Salfi*, 422 U.S. at 765, 95 S.Ct. at 2466.

Considerations of judicial economy are present as well. Should a party succeed in vindicating his rights in the administrative process, the courts may never have to intervene. *See, e.g., Christian v. New York State Department of Labor*, 414 U.S. 614, 622, 94 S.Ct. 747, 751, 39 L.Ed.2d 38 (1974). The same reasons that support the prohibition against appeals from interlocutory orders in a trial court are pertinent to the administrative context as well. *McKart v.*

*United States*, 395 U.S. at 194, 89 S.Ct. at 1663. The policy against "piecemeal review" of agency action, *FTC v. Standard Oil Co. of California*, 449 U.S. 232, 242, 101 S.Ct. 488, 494, 66 L.Ed.2d 416 (1980), is therefore the counterpart of the rule limiting appeals from trial court rulings. *See, Sun Shipbuilding & Dry Dock Co. v. Benefits Review Board*, 535 F.2d 758 (3d Cir. 1976).

Despite the frequently reiterated benefits of exhaustion, courts have declined to require it when no purpose would be served by deferring review. For example, where a dispute centers on legal questions such as constitutional or statutory interpretation, and the facts are uncontested, then the interest in "full administrative fact gathering and utilization of agency expertise" is not harmed by earlier judicial scrutiny. *McGee v. United States*, 402 U.S. 479, 486, 91 S.Ct. 1565, 1569, 29 L.Ed.2d 47 (1971). In those circumstances, a rigid exhaustion requirement would entail "a commitment of administrative resources unsupported by any administrative or judicial interest." *Weinberger v. Salfi*, 422 U.S. at 766,[2] 95 S.Ct. at 2467.

Another exception to the exhaustion requirement applies when irreparable injury will result unless the court promptly intervenes in the administrative process. *See Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974). Thus, in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Court permitted judicial review of a decision to terminate disability benefits, even though the claimant had not exhausted the Social Security

---

1. Nevertheless, application of the exhaustion doctrine has been described as one of the most unsettled areas in the law. As Professor Davis expresses it, "According to the holdings, exhaustion of administrative remedies is sometimes required for getting judicial review and sometimes not. The common judicial statement that one must exhaust administrative remedies before going to court is false almost as often as it is true." K. Davis, Administrative Law of the Seventies § 20.01 (1976).

2. Whether the exhaustion requirement is one going to the jurisdiction of the court or to its powers of discretion has led to interesting discussion. Much depends upon the circumstances of each case. Certainly, if exhaustion were always jurisdictional, it would not be possible for a government official to waive it and confer power on the court to hear the appeal. *See Mathews v. Diaz*, 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976). *See also*, K. Davis, Administrative Law Treatise §§ 20.00–20.00–1 (Supp. 1980).

Administration's internal review procedures. The Court reasoned that a quick resolution of the claimant's dispute with the agency was essential, since he was so dependent upon the benefits for his survival that "an erroneous termination would damage him in a way not recompensable through retroactive payments." *Id.* at 330–331, 96 S.Ct. at 1900–901. Finally, exhaustion has been excused in some cases when agency action clearly violates statutory or constitutional rights. *See Babcock and Wilcox Co. v. Marshall*, 610 F.2d 1128, 1138 (3d Cir. 1979).[3]

■ It may be observed that the concepts of "final decision" and "exhaustion" are often closely intertwined and sometimes confused. In *Mathews v. Eldridge*, the Court noted that the Social Security Act itself requires exhaustion of administrative remedies, in the form of a "final decision of the Secretary made after a hearing," 42 U.S.C. § 405(g), as a jurisdictional prerequisite for judicial review. 424 U.S. at 327–328, 96 S.Ct. at 899. The question before the Court was whether the initial "denial of Eldridge's claim to continued benefits was a sufficiently 'final' decision with respect to his constitutional claim to satisfy the statutory exhaustion requirement." *Id.* at 330, 96 S.Ct. at 900. In deciding that it was sufficient, the Court invoked "the core principle that statutorily created finality requirements should, if possible, be construed so as not to cause crucial collateral claims to be lost and potentially irreparable injuries to be suffered." *Id.* at 331, n.11, 96 S.Ct. at 901. *See also Weinberger v. Salfi*, 422 U.S. at 764–767, 95 S.Ct. at 2466–2467.

Finality and exhaustion are not identical, however, no matter how often they converge. In *FTC v. Standard Oil Co. of California*, 449 U.S. at 246, 101 S.Ct. at 496, the Court held that the issuance of a complaint by the FTC against an oil company was not "final agency action" within the meaning of § 10(c) of the Administrative Procedure Act, 5 U.S.C. § 704, and therefore not subject to judicial review before the conclusion of administrative adjudication. The company contended that it had exhausted its administrative remedies because the agency had refused its request to withdraw the complaint. The Court conceded this might be true, but said that the company had "mistaken exhaustion for finality." 449 U.S. at 243, 101 S.Ct. at 494.

In general, exhaustion refers to the steps which the litigant must take, whereas finality refers to the conclusion of activity by the agency. As in the *Standard Oil* case, a party may take all the measures available to it in the administrative process to obtain relief, and yet not obtain a final reviewable order. It is also possible that an agency order may be final for purposes of appeal, even though the party has not pursued his administrative remedies to the end. For example, an agency order may be appealable under § 10(c) of the Administrative Procedure Act even though the aggrieved party still has a right to internal reconsideration or review.[4]

In any event, finality and exhaustion serve the same interests. As the Court observed in *Standard Oil*, 449 U.S. at 244, n.11, 101 S.Ct. at 495, n.11, "one of the principal reasons to await the termination of agency proceedings" is the possibility that a dispute may be mooted if the party ultimately prevails before the agency, thereby obviating all occasion for judicial review.

---

**3.** To some extent, the factors discussed in the text are also important in assessing whether a controversy is "ripe" for judicial review. *See e.g., e.g., Hooker Chemical Co. v. EPA*, 642 F.2d 48 (3d Cir. 1981); *Wearley v. FTC*, 616 F.2d 662 (3d Cir.), *cert. denied*, 449 U.S. 822, 101 S.Ct. 81, 66 L.Ed.2d 25 (1980).

**4.** Section 10(c) of the APA, 5 U.S.C. § 704, states:

"... Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority."

Bethlehem argues that the purposes of the exhaustion doctrine would not be served here by deferring judicial review until after completion of the agency hearing. First, the company claims that its objections to the issuance of EPA's notice are purely legal in nature, so there is no need for the agency to develop a factual record or apply its technical expertise. Second, Bethlehem insists that further prosecution of its cause through administrative channels would be futile, since the company's challenges are not related to compliance or exemption and therefore cannot be raised at the hearing. Finally, Bethlehem asserts that it will suffer irreparable injury if judicial review is not available immediately, because the noncompliance penalty is continuing to accrue.

Bethlehem's argument fails to acknowledge that the determinations of compliance and exemption are clearly matters of fact that require a hearing. Indeed, the company's entire dispute with EPA will come to an end if it prevails on either one of these dispositive issues at the agency hearing. As we noted above, the possibility that an administrative proceeding may moot the necessity for judicial action is one of the principal objections to review of interlocutory agency rulings. On the other hand, if Bethlehem should lose before the agency and then appeal, the court's overall review will be better informed because it will have the benefit of findings reached after an evidentiary hearing on technical matters.

A different consideration applies to Bethlehem's contention that the notice of noncompliance is void because it was not issued within the 30-day time period mandated by § 7420(b)(3). This objection is actually an attack on the validity of 40 C.F.R. § 66.11(c), which authorizes EPA to issue a notice at any time after discovery of noncompliance and calculates the penalty from date of receipt.

If Bethlehem's argument that the regulation is contrary to the plain meaning of the statute were sustained, both the regulation and the notice would be invalidated. As noted earlier, however, an attack of that nature may be filed only in the Court of Appeals for the District of Columbia Circuit. 42 U.S.C. § 7607(b)(1). Bethlehem has already joined in a suit pending before that court which questions whether the agency's regulations conform to the requirements of the statute. A challenge to the validity of a regulation thus presents no special reason for us to intervene at this stage, and in fact points the other way.

The primary focus of our inquiry, therefore, must be on Bethlehem's assertion that only immediate judicial review can protect it from undue hardship. Bethlehem contends that issuance of the notice has placed the company in a position where it must either (1) spend money modifying its pollution control equipment to the agency's satisfaction; (2) shut down its facility until the dispute is resolved; or (3) continue operations without change in the hope that ultimately it will be vindicated.

The company finds the first two choices unacceptable because it believes that its present equipment is adequate. Its difficulty with the third option is that the penalty is increasing daily, so that the amount assessed would be substantial indeed if Bethlehem errs in its expectation of a favorable outcome to the controversy. The company litigates the issue of noncompliance at its peril by risking a formidable penalty if it should lose in the end, and for that reason argues that the court should address the dispositive legal defenses now.

Bethlehem's argument for early judicial review relies heavily upon *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), in which the Supreme Court held that the Food, Drug, and Cosmetic Act does not forbid pre-enforcement review of a regulation promulgated by the Commissioner of Food and Drugs. In reaching its conclusion, the Court observed that the litigants were confronted with the choice between expending large sums to comply with the regulation or risking criminal prosecution. The Court found that this dilemma constituted sufficient hardship to justify pre-enforcement review of the validity of the regulation.

There are several distinctions between *Abbott* and the case at hand. First, *Abbott* was a pre-enforcement case, while here administrative proceedings are already in progress. Unlike *Abbott*, it cannot be said that this challenge to the regulation "is calculated to speed enforcement." *Id.* at 154, 87 S.Ct. at 1518. On the contrary, the very purpose of Bethlehem's suit is to interrupt the enforcement action pending against it. We therefore distinguish *Abbott*, as did the Court in *Standard Oil Co. of California*, on the grounds that judicial review now "would delay resolution of the ultimate question whether the Act was violated." 449 U.S. at 242, 101 S.Ct. at 494.

Secondly, and more importantly, the sole question raised by the litigants in *Abbott* was the "purely legal one [of] whether the statute was properly construed by the Commissioner" in his regulation. 387 U.S. at 149, 87 S.Ct. at 1515. Here, by contrast, there are several dispositive issues, including two—compliance and exemption—that require a factual determination. Moreover, as we noted earlier, challenges to the legality of the regulations may only be brought in the Court of Appeals for the District of Columbia Circuit. Unlike the assault on the regulation in *Abbott*, then, Bethlehem's attack on the EPA rules do not even provide us with jurisdiction.

Moreover, the regulation challenged in *Abbott* was final agency action. Taking a flexible view of finality, the Court noted that the regulation was clearly definitive and no further administrative proceedings were contemplated. 387 U.S. at 149–151, 87 S.Ct. at 1515–1517. That is not the situation here. Much like the complaint issued by the FTC in the *Standard Oil* case, the notice of noncompliance issued by EPA only represents a "threshold determination" triggering further proceedings. 449 U.S. at 241, 101 S.Ct. at 494. By seeking review at this early stage of the administrative process, Bethlehem hopes to forestall a final decision on the merits.

In sum, *Abbott* does not support Bethlehem's contention that the company will suffer irreparable injury unless it obtains prompt judicial review.

A basic defect in Bethlehem's argument is that it proves too much. Undue hardship is a narrow exception to the exhaustion requirement. *American Federation of Government Employees, Local 1904 v. Resor*, 442 F.2d 993, 995 (3d Cir. 1971). Allowing interlocutory review by the court every time EPA issues a notice of noncompliance would permit the exception to swallow the rule. Bethlehem's choice between risking mounting fines or yielding to coerced compliance is the same alternative presented to every alleged violator, because that plan of enforcement is built into the Act. As this court said in another administrative context:

> "Finally, and most importantly, if [the hardship] exception were to be applied in this case, it would likewise apply in every case where the [agency] contemplated disciplinary proceedings. Any company threatened by an [agency] hearing could run into district court claiming that the imposition of sanctions would result in irreparable injury. To allow such interruption would frustrate the [regulatory] scheme envisioned by Congress in passing the ... Act."

*First Jersey Securities, Inc. v. Bergen*, 605 F.2d 690, 696–697 (3d Cir.), *cert. denied*, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980). Adoption of Bethlehem's position would nullify the statutory enforcement plan.

Section 120(e) of the Act speaks of "judicial review of any penalty." But no penalty is payable until after the conclusion of administrative proceedings to determine whether the company has violated the Act. Moreover, § 307(g), 42 U.S.C. § 7607(g), prohibits a court from granting "any stay, injunctive, or similar relief before final judgment" in a § 120 controversy. On the whole, then, the statute supports EPA's position that judicial review should be deferred until "after all administrative remedies have been exhausted," 40 C.F.R. § 66.81, and then only if a penalty is imposed.

Section 120 was enacted by Congress in 1977 to combat what it perceived as recalci-

trance by industry in coming into compliance with Clean Air Act standards. Before then, § 113 of the Act, 42 U.S.C. § 1857c–8 (current version at 42 U.S.C. § 7413), allowed a court to impose civil fines and even criminal penalties on violators. Despite § 113's sanctions, the uncertainty and delay of litigation made it profitable for violators to continue their noncompliance. Section 120 eliminates this incentive by assessing a mandatory administrative penalty equal to the economic value gained from continuing noncompliance. The sanction is designed to end the competitive advantage realized by firms that do not install or operate necessary pollution control equipment. The offender gains nothing by fostering administrative and judicial delays, because the penalty begins to accrue on the date of notification by EPA. This unique economic sanction is independent of, and in addition to, whatever judicial penalties might be imposed under § 113.[5]

Perhaps it is true, as Bethlehem contends, that a company cited for noncompliance may feel coerced into spending money for more efficient pollution controls than it sincerely believes it needs, rather than risk an unfavorable outcome after extended litigation. We are not persuaded that this constitutes undue hardship. It may well be that the company's evaluation of its compliance status is unduly optimistic.

At any rate, a company cited for noncompliance always has the option to contest its liability before EPA and, if necessary, appeal to the courts. If the company wins, no penalty is due. The only cost sustained by the company in that event would be for litigation expenses, and it is well-settled that they do not constitute irreparable injury. *See, e.g., Renegotiation Board v. Bannercraft Clothing Co*, 415 U.S. at 24, 94 S.Ct. at 1040.

On the other hand, if the agency prevails, the company would be charged with the amount of the noncompliance penalty. That is not to say that the § 120 assessment

is punitive or confiscatory, however, for in theory it only recovers whatever financial advantage the company gained by continuing to violate the law. In short, we find no hardship warranting an exception to the exhaustion requirement here.

We conclude, therefore, that the court should not entertain Bethlehem's petition for review at this time because the company has failed to exhaust its administrative remedies. We intimate no view on the substantive issues raised here. The petition for review will be dismissed.

---

5. *See* Note, Deterring Air Polluters Through Economically Efficient Sanctions, 32 Stan.L. Rev. 807, 807–812 (April, 1980).