**EDWARD FEIN, Plaintiff**

**v.**

**FRANCIS PELTIER, individually, and in his official capacity,
SCHULER BROWN, individually and in his official capacity,
and the UNITED STATES OF AMERICA, Defendants**

Civ. No. 1996-201M

District Court of the Virgin Islands

Div. of St. Thomas and St. John

December 5, 1996

ALAN SMITH, ESQ., (HODGE & FRANCOIS), *for Plaintiff*

James Carroll, Esq., (Assistant United States Attorney), and PATRICIA A. HOOKS, ESQ., (Office of the Solicitor), *for Defendant*

MOORE, *Chief Judge*

## MEMORANDUM OPINION

Edward Fein ["plaintiff" or "Fein"] has moved for a preliminary and permanent injunction and the defendants have moved to dismiss the action for lack of jurisdiction. An evidentiary hearing was held on September 30 and October 1, 1996. At the close of the evidence, the Court ruled from the bench denying plaintiff's motion for an injunction and granting defendants' motion to dismiss on a finding that the Court lacks subject matter jurisdiction over the case. This Memorandum amplifies and clarifies that ruling from the bench.

## I. Factual and Procedural Background

This case arises out of Mr. Fein's attempt to construct a house on property located in Estate Denis Bay on the island of St. John, United States Virgin Islands. The property in question is part of approximately 94 acres that was conveyed to the United States in 1975 for inclusion in the Virgin Islands National Park ["VINP"] administered under the United States Department of Interior by the National Park Service ["NPS"]. The deed conveying the land to the United States is subject to

> a right of use and occupancy reserved by the Grantors . . .for a period of sixty (60) years . . . of that area comprising one (1) acre . . . for noncommercial residential purposes. This right includes the right to construct . . . one single-family residential dwelling of traditional island architecture . . . . The Grantors shall not disturb the historic ruins within the area reserved by them and will cooperate with the National Park Service by permitting representatives of the Service to enter upon the property at reasonable times to perform any necessary stabilization work on the ruins.
>
> It is the intention of the Grantors to convey all of their interest in all parts of Estate Denis Bay . . . and to release to the United States all of their interest therein except such interests as are specifically reserved in this deed.
>
> This land is being acquired by the National Park Service of the United States Department of the Interior for Virgin Islands National Park.

(Deed dated September 19, 1975, Defs' Ex. A ["Deed"].)

In 1991, this reserved property right was assigned to the plaintiff, with the consent of the NPS, as required by the Deed. (Consent to Assignment, Pl's Ex. C and Assignment, Pl's Ex. D.) In 1994 Fein applied through the Department of Planning and Natural Resources ["DPNR"] for a minor Coastal Zone Management ["CZM"] permit to build a residence on the property covered by the Deed. Although the NPS had not received formal notice, it got wind of Fein's application and put DPNR on notice of the Park Service's interest in the project, (NPS Letter dated Feb. 2, 1994, Defs' Ex. B-1), warned of the project's possible impact on historical ruins on the land, (NPS Letter dated Aug. 11, 1994, Defs' Ex. B-2), and protested that the architectural plans did not conform to the Deed restrictions, (NPS Letter dated Sept. 20, 1994, Defs' Ex. B-2).

Although no evidence was presented that DPNR ever directly responded to the NPS, Fein was required to adjust the plans to meet traditional island architecture, incorporating the Service's suggestions. (DPNR Letter, Sept. 26, 1994, Pl's Ex. F.) The plans were revised and approved by DPNR, (Callwood-Daniels, Dec. 13, 1994, Pl's Ex. G); the permit was then issued to Fein. An adjoining landowner who had not received proper notice successfully appealed to the Virgin Islands Board of Land Use Appeals ["Board"], the initial permit was voided, and the permitting process started anew.

This time the NPS received an official notice from DPNR on March 11, 1996, of Fein's renewed application. (Notice dated March 6, 1996, Defs' Ex. D.) Francis Peltier, Superintendent of the Virgin Islands National Park Group, responded on April 9, 1996, with a letter to Mr. Carl Howard of DPNR which conveyed the findings of NPS employees who visited the site in 1995 and 1996 to determine the potential for disturbance of historical resources.

> The proposed construction on this site will: . . . likely impact subterranean archaeological resources associated with the plantation, particularly slave quarters. The proposed location . . . will be in an area adjacent to 5 existing ruins of slave quarter. The original 1850 Estate Appraisement indicates that an additional 26 slave quarters existed on the plantation and historically [sic] knowledge indi-

cates that all slave quarters were located in close approximation [sic]. Furthermore, existing drawings show that a water well and horsemill existed in the area proposed to be disturbed, not shown on some construction plans for the area. Other unknown features such as burials may also exist at that location.

Because this property is owned by the NPS and significant historical disturbance is highly probable for construction at this location, the National Park Service cannot permit any construction at this site at this time. We also request that the . . . [DPNR] notify Mr. Fein that NPS National Historic Preservation Act Section 106 Compliance procedures must be implemented to determine the exact nature and extent of any site disturbance to historical features at this location. . . .

(Pl's Ex. I.) Peltier then informed DPNR that "it is imperative that this application for a Minor Coastal Zone Permit not be approved at this time" and that the NPS cultural resource compliance staff immediately would be initiating the section 106 compliance procedures required by the National Historic Preservation Act, 16 U.S.C. § 470f.

Without any response from DPNR to Peltier's April 9th letter, and before the NPS could complete the section 106 compliance procedures, DPNR issued the minor coastal zone permit on June 3, 1996, to "construct one single family residence . . . at plot # 3A, Estate Denis Bay, St. John, Virgin Islands." (Pl's Ex. J.) In a letter dated June 28, 1996,[1] the Commissioner of DPNR, Beulah Dalmida-Smith, finally responded to the NPS communications, informing Peltier after the fact of the reasons the permit was granted, which included DPNR's conclusion that section 106 did not apply because the construction of the dwelling was not a federal undertaking. (Pl's Ex. K. at pp. 3-4, 6.) Peltier responded that the National Historic Preservation Act was applicable and that the National Park Service was bound to follow applicable federal

---

[1] Although the letter was dated June 28, 1996, NPS did not receive it until August 1, 1996. (See NPS response of Aug. 13, 1996, Pl's Ex. L.)

statutes and regulations and was not bound by DPNR's conclusions. (Letter dated Aug. 13, 1996, Pl's Ex. L.)

On September 1, 1996, Fein's contractor began site preparation for construction of the residence. On September 6, 1996, Peltier addressed a letter to Fein stating that "Section 106 of the National Historic Preservation Act applies to this proposed action," and further that

> [t]he National Park Service has an obligation under the law to protect the cultural and natural resources under its jurisdiction. We therefore must inform you that work to construct the structure is potentially in violation of the Archeological Resources Protection Act (ARPA) and may result in your being cited for a felony. If you continue construction before acceptable resolution of this matter, we will have no recourse but to cite you for ARPA violation.

(Pl's Ex. E.) On September 9, 11, and 12, 1996, VINP enforcement officers entered the construction site and ordered plaintiff's contractor to cease all site preparation activities. Workers on the site were told that they would "go to jail" if work was not stopped and all activities ceased.

On September 16, 1996, Fein brought this lawsuit seeking equitable relief, including a temporary restraining order. Plaintiff alleged in his first amended complaint that the actions of these representatives of the United States constituted a taking of his property without due process of law in violation of the Fifth Amendment of the Constitution.[2] Fein asserted that this Court has jurisdiction under 28 U.S.C. § 1331 and the government has waived sovereign immunity under the Administrative Procedure Act, 5 U.S.C. § 702.[3] The government argued that judicial review under section 702 of the Administrative Procedure Act is available

---

[2] The Fifth Amendment to the Constitution is made applicable in the Virgin Islands via section 3 of the Revised Organic Act. The Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995), *reprinted in* V.I. CODE ANN., Historical Documents, 73-177 (codified as amended) (1995) ["Revised Organic Act"].

[3] Section 702 provides that "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof." 5 U.S.C. § 702.

only for "final agency actions," and that the plaintiff has not exhausted his administrative remedies.

On September 19, a hearing was held and a temporary restraining order was issued allowing certain aspects of Fein's project to proceed subject to certain conditions, which included not disturbing any of the historic ruins. A hearing on the preliminary and permanent injunction was then held on September 30 and October 1, 1996, during which it was revealed that the contractor had disturbed some of the historic ruins by moving an historical stone wall. The Court ruled from the bench that a permanent and preliminary injunction would not be issued, and the matter would be dismissed for lack of subject matter jurisdiction. In addition the Court ruled that even if it had proper jurisdiction, the plaintiff would not be entitled to equitable relief because he had not come into court with clean hands.

## II. Discussion

■ The issue of the Court's jurisdiction turns on whether the National Historic Preservation Act of 1966, 16 U.S.C. §§ 470 - 470x-6 ["NHPA"], and the Archaeological Resources Protection Act, 16 U.S.C. §§ 470aa-mm ,["ARPA"] are applicable. If applicable, this Court has jurisdiction under section 702 of the Administrative Procedure Act only if the plaintiff has exhausted his administrative remedies. The Court has found that NHPA and ARPA are applicable and that the plaintiff has not exhausted his administrative remedies. Accordingly, the case must be dismissed for lack of subject matter jurisdiction.

### A. Applicability of the NHPA

The Court concluded that the Section 106 Compliance Procedures of the National Historic Preservation Act apply to Mr. Fein's project for two reasons: (1) the NPS is required to manage and maintain property it owns to preserve historic, archeological, architectural and cultural values in compliance with section 106 and (2) the NPS is required by section 106 itself to take into account the effect Mr. Fein's undertaking will have on a site listed in the National Register, on which the Denis Bay property is included.

349

We first note that the goal of the NHPA is

> to provide the citizens of our nation with an understanding and appreciation of their cultural origins and heritage. It is to foster a long-range perspective of our human use of the land and its resources, of the development of our communities and politics, of our technologies and arts. It is directed toward protection and enhancement of modern remnants of our architectural and engineering traditions — for our immediate appreciation and use — and of the heritage information that is inherent in our prehistoric and historic resources — which serve to tie us to the lessons and achievements of the past.

H.R. Rep. No. No. 1457, 96th Cong., 2nd Sess. (1980), *reprinted in* 1980 U.S.C.C.A.N. 6378; *see also* 16 U.S.C. § 470-1(3)("It shall be the policy of the Federal Government . . . to administer federally owned, administered, or controlled prehistoric and historic resources in a spirit of stewardship for the inspiration and benefit of present and future generations.").

Section 110(a) of NHPA, 16 U.S.C. § 470h-2(a), affirmatively requires that the NPS manage and maintain property it has jurisdiction over in accordance *with* section 106, 16 U.S.C. § 470f, as well as projects which require NPS approval. Section 110(a)(2)(B) requires that

> (1) The heads of all Federal agencies shall assume responsibility for the preservation of *historic properties which are owned . . . by such agency. . . .* Each agency shall undertake, consistent with the preservation of such properties and the mission of the agency . . . , any preservation, as may be necessary to carry out this section.
> (2) Each Federal agency shall establish . . . a preservation program for the . . . protection of historic properties. Such program shall ensure —
> . . . .
> (B) that *such properties under the jurisdiction . . . of the agency as are listed in . . . the National Register are managed and maintained* in a way that considers the preservation of their historic, archeological, architectural, and cultural

values *in compliance with section 106* [16 U.S.C. § 470f]
. . . .

. . . .

(d) All Federal agencies shall carry out agency programs and projects (including those under which . . . *any Federal . . . approval is required*) in accordance with the purposes of this Act . . . .

16 U.S.C. § 470h-2 (a)(1), (2)(B), 2(d)(1996 Supp.) (emphasis added).

■ It is undisputed that the property in question is owned by the United States for inclusion in the VINP under the administration of the NPS and is listed in the National Register of Historic Places. (See Deed, Defs' Ex. B, and Dennis Bay Historic District, Defs' Ex. F.) Accordingly, the NHPA applies to plaintiff's construction project proposed in the Dennis Bay Historic District, section 106 compliance procedures are required before it can be commenced, and this Court has no jurisdiction to interfere with that administrative procedure at this time, if ever.

Further, section 106 of the NHPA provides in relevant part that

[t]he head of any Federal department . . . having the authority *to license any undertaking* shall, . . . prior to the issuance of any license, . . . take into account the effect of the undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register.

16 U.S.C. § 470f (emphasis added).[4]

"Undertaking" is defined for purposes of NHPA as

a project, activity, or program funded in whole or in part under the direct or indirect jurisdiction of a Federal agency, including —

. . . .

(C) those requiring a Federal . . . approval . . . .

[4]The procedures for complying with section 106 are found in the detailed regulations promulgated by the Advisory Council on Historic Preservation ["Advisory Council"], 36 C.F.R. §§ 800.3 - 800.9.

16 U.S.C. § 470w(7). The definition of 'undertaking' is further refined in the federal regulations promulgated under the act as

> any project, activity or program that can result in changes in the character or use of historic properties, if any such historic properties are located in the area of potential effects. The project, activity, or program must be . . . licensed or assisted by a Federal agency.

36 C.F.R. § 800.2(o). In light of the interpretation given in the regulations and by simply parsing the language used by the Congress, the Court construes the statutory definition of undertaking as three separate nouns "under the direct or indirect jurisdiction of a Federal agency" — a "project", an "activity", and a "program funded in whole or in part". The Court thus reads the phrase "funded in whole or in part" as modifying only the word "program" and not the nouns "activity" and "project". Accordingly, the Court finds that an undertaking for purposes of section 106 includes a project or activity under the direct or indirect jurisdiction of the NPS which requires its prior approval, regardless of whether the project or activity is funded in whole or in part by the federal government.

The proposed project to construct Fein's home is under at least the indirect jurisdiction of the NPS; it clearly involves the potential for "changes in the character or use of historic properties" set forth in the regulations. Further, the construction of a single family residential home within the Dennis Bay Historical District is conditioned by the terms of the reservation in the Deed that Fein, as successor of the grantors who created the reservation, "shall not disturb the historic ruins within the area reserved by them and will cooperate with the National Park Service by permitting representatives of the Service to enter upon the property at reasonable times to perform any necessary stabilization work on the ruins." (Deed, Def's Ex. A). The Court construes these restrictions on Fein's reserved property interest to require that he seek and obtain prior approval from the NPS before engaging in any construction authorized under the Deed which might have the potential to disturb historic ruins. Section 106 by its own terms thus applies for this reason to Fein's project under section 110 of the NHPA.

According to testimony at the hearing from William Cissel, Chief of Cultural Resources of the Virgin Islands National Park Group, the section 106 process has not been completed. (Transcript of Cissel's testimony on Oct. 1, 1996 at 22.) Cissel prepared a section 106 report which concluded that the proposed construction would have an adverse effect on the historical and cultural resources in the area. The report recommended that the project not be allowed to go forward, or in the alternative suggested mitigating measures that could be taken. This report and conclusion was submitted to the State Historic Preservation Officer, the Commissioner of DPNR, in accordance with federal regulations, who subsequently disagreed with the NPS's finding of a potential adverse effect. The report has since been sent to the Advisory Council for review and comment. No final decision about the effect of the construction and whether it can go forward as currently conceived has been rendered by the Advisory Council. Thus Fein has not exhausted his administrative remedies and there has been no final decision for this Court to properly review under section 704 of the Administrative Procedure Act, 5 U.S.C. § 704. *See generally Bethlehem Steel Corp. v. EPA*, 669 F.2d 903 (3d Cir. 1982).

## B. Applicability of the ARPA

The purpose of the Archeological Resources Protection Act "is to secure, for the present and future benefit of the American people, the protection of archaeological resources and sites which are on public lands . . . ." 16 U.S.C. § 470aa(b). Under ARPA, it is unlawful to "excavate, remove, damage or otherwise alter or deface any archaeological resource located on public lands . . . unless such activity is pursuant to a permit issued under section 470cc(h)(2) of this title . . . ." 16 U.S.C. § 470ee(a).

The term "public lands" is defined as "(A) lands which are owned and administered by the United States as part of — (i) the national park system, . . . and (B) all other lands the fee title to which is held by the United States . . . ." 16 U.S.C. § 470bb(3). Plaintiff argues that the United States does "not own and administer as part of the national park system the Subject Parcel." (Pl's Mem. dated Sep. 16, 1996, at 12.) However, the plaintiff does not dispute that the United States does in fact hold fee title to the

property in question, adding that it is subject to Fein's possessory interest for a term of years. Accordingly, the Court has found that the property is 'public lands' within the meaning of ARPA.

Plaintiff also argues that ARPA is not applicable because it is only directed at "purposeful excavation and removal of archeological resources, not excavations which may, or in fact inadvertently do, uncover such resources." (Pl's Mem. at 12, *quoting Attakai v. United States*, 746 F. Supp. 1395, 1410 (D.Ariz. 1990).) The *Attakai* case involved the construction of fences and livestock watering facilities by federal agencies on portions of an Indian reservation. ARPA was inapplicable for many reasons, including the fact that the activities fell within an exemption under ARPA and thus the above quote is mere dicta. Furthermore, the actions of the plaintiff in this case are easily characterized as "purposeful excavation and removal of archaeological resources" inasmuch as Fein was made aware through the language of the Deed that historical ruins were present in the area he proposed to build a house. He and his agents were thus charged with the knowledge that any digging on the site would certainly cause the excavation and removal of archaeological resources, which would be 'purposeful' and not inadvertent. Thus this Court finds that ARPA is applicable and Fein was required to obtain the approval of the NPS before engaging in construction on the historic site.

■ As with the NHPA, judicial review of the actions of the NPS taken in accordance with ARPA is premature. Since Fein has not even applied for a permit under ARPA, he may not challenge in this Court the Park Service's conclusion that his actions may violate ARPA. The necessary administrative procedures must be followed, and only in the event that such procedures result in an adverse decision to Fein, may he seek judicial review.

## C. The doctrine of clean hands

Even if this Court were to conclude that the ARPA and NHPA were inapplicable, equitable relief in the form of an injunction would not be warranted. When it fashioned the terms of the TRO, this Court made it very clear to plaintiff that the proposed site preparation he was asking the Court to allow pending the preliminary injunction hearing must not disturb any of the existing and

known historical ruins. Contrary to the Court's clearly expressed direction, the plaintiff nevertheless removed a portion of one of the historical stone walls on the site. Given the Deed and the circumstances of this case, this destruction of a historical ruin during the time of the TRO cannot be characterized as inadvertent. It is a long established rule of equity that those who come into the Court seeking equity must do equity. Mr. Fein's actions demonstrate that he has not conducted himself with the equity which would entitle him to equitable relief. Accordingly, even if jurisdiction were well founded, injunctive relief would not be granted.

ENTERED this 5th day of December, 1996.

## ORDER

For the reasons stated at the hearing concluded on October 1, 1996, and for the reasons set forth in the accompanying memorandum of even date, it is hereby

ORDERED that defendant's motion to dismiss the case for lack of subject matter jurisdiction is GRANTED.

ENTERED this 5th day of December, 1996.