**REPUBLIC INDUSTRIES, INC., a Delaware corporation, as successor in interest to Johnson Motor Lines, Inc.**

v.

**CENTRAL PENNSYLVANIA TEAMSTERS PENSION FUND.**

Civ. A. No. 82–0146.

United States District Court,
E. D. Pennsylvania.

March 22, 1982.

Lester Bridgeman, L. T. Urbanczyk, Washington, D. C., David Steck, Philadelphia, Pa., for plaintiff.

Harry A. Dower, Allentown, Pa., for defendant.

David F. Power, amicus curiae Pension Benefit Guarantee Corp.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

The Multiemployer Pension Plan Act Amendments of 1980 (MPPAA or Act), 29 U.S.C. § 1381 *et seq.* amended the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 by creating and imposing upon employers liability for withdrawal from multiemployer pension funds in an amount equal to their *pro rata* share of unfunded, vested pension benefits; i.e., withdrawal liability. Plaintiff, Republic Industries, Inc., (Republic) successor in interest to Johnson Motor Lines, Inc., (Johnson) challenges the constitutionality of MPPAA and moves for a preliminary injunction to prohibit defendant, Central Pennsylvania Teamsters Pension Fund (Fund), from asserting a claim for $850,000 against it by reason of withdrawal liability under the provisions of the Act.

A brief factual recitation is necessary in order to fully understand the contentions of the parties.

Prior to August 8, 1980, Johnson was a motor carrier operating under authority granted by the Interstate Commerce Commission (ICC). Pursuant to collective bargaining agreements with various locals or associations of local unions of the International Brotherhood of Teamsters, Johnson made periodic payments to several multiemployer pension funds, including defendant.

Because of severe losses sustained in its business, Johnson's directors decided to terminate all its operations as of August 8, 1980. Johnson was not *then* obliged by the terms of any collective bargaining or other agreement, or otherwise by operation of law, to make any payments to the Fund or any other pension fund as a result of the cessation of its business.

On September 26, 1980, seven weeks after Johnson had shut down its operations and ceased making contributions to the funds, the President signed MPPAA; it applies retroactively.

▮▮▮▮ Plaintiff alleges that the statute deprives it of due process in that the Act permits pension fund trustees to determine, based upon actuarial assumptions, 29 U.S.C. § 1393, the amount of a withdrawing employer's liability to the Fund. 29 U.S.C. § 1391. Upon receipt of an appropriate demand for withdrawal liability, the withdrawing employer "shall pay the amount determined". 29 U.S.C. § 1399(c)(1)(A)(i). Where a dispute exists regarding the validity or amount of a claim, the statute requires that it be decided by arbitration. *See* 29 U.S.C. § 1401. Significantly, defendant and *amicus curiae*, the Pension Benefit Guaranty Corporation (PBGC), have represented that there will not be, and indeed that there cannot be, any acceleration of payments during the arbitration process, this even in the event of a delinquency. Regular monthly payments, however, must be made during this period. Where an employer waives or avoids the arbitration process, the full demand falls due. Plaintiff's challenges to the Act are primarily based upon the Fifth, and to a lesser extent, the Seventh Amendments. The Fifth Amendment violations alleged are that MPPAA

(1) impermissibly authorizes seizure of plaintiff's assets without a pre-seizure hearing; i.e., that plaintiff must make monthly installment payments during the arbitration which it, plaintiff, must request in order to challenge the determination of its withdrawal liability.

(2) improperly delegates specified functions to actuaries who base their calculations upon assumptions and guesswork. Worse, these assumptions, and the conclu-

sions which they yield, are "presumed correct unless the party contesting [them] shows by a clear preponderance of the evidence that the determination was unreasonable or clearly erroneous". *See* 29 U.S.C. § 1401(a)(3)(A). Hence, plaintiff complains, that the Act improperly sanctions actuarial assumptions by making them difficult to upset. Moreover, since the actuarial assumptions are dignified by a mild statutory presumption of correctness during the arbitration process, and our scope of review requires affirming all facts supported by a "clear preponderance" of the evidence, 29 U.S.C. § 1401(c), plaintiff additionally asserts that the whole procedure is irredeemably tainted and that it "stacks the deck" against it.

(3) unlawfully imposes retroactive liability in that it assesses withdrawal liability against Republic for Johnson's withdrawal from the Fund notwithstanding the fact that on the date of Johnson's withdrawal, MPPAA and its resulting obligations were not yet enacted.

(4) illegally promotes the public purpose of providing pension benefits to workers while using private funds to accomplish this task; i.e., it "takes" private property without just compensation.

The Seventh Amendment violation may be simply stated: MPPAA denies plaintiff the right to trial by jury on the issues of the amount and extent of plaintiff's withdrawal liability.

Defendant and *amicus curiae*, responding to these contentions, assert that because the Act does not facially abrogate constitutional rights, plaintiff must exhaust non-judicial remedies prior to institution of suit. Since plaintiff has failed to do so, defendant urges dismissal without prejudice. We agree with defendant's analysis of MPPAA and grant its motion to dismiss.

■ We begin our analysis of this matter with reference to the "long settled rule" that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted". *Myers v. Bethlehem Steel Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58

S.Ct. 459, 463–464, 82 L.Ed. 638 (1938). This rule, however, admits of some exceptions. For example, where a dispute centers on legal questions of constitutional dimensions and the facts are uncontested, "full administrative fact gathering and utilization of agency expertise" is not necessary. *McGee v. United States*, 402 U.S. 479, 486, 91 S.Ct. 1565, 1569, 29 L.Ed.2d 47 (1971). Moreover, where irreparable injury will result, if plaintiff is required to exhaust administrative remedies, courts do not insist upon exhaustion. *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974). Lastly, exhaustion will be excused where agency action "clearly and unambiguously violates statutory or constitutional rights". *Babcock and Wilcox v. Marshall*, 610 F.2d 1128, 1138 (3d Cir. 1979), quoting *Barnes v. Chatterton*, 515 F.2d 916, 920 (3d Cir. 1975) (emphasis added); *Mikkilineni v. United Engineers & Constructors, Inc.*, 485 F.Supp. 1292, 1298 (E.D.Pa.1980). *See generally, Bethlehem Steel Corp. v. Environmental Protective Agency*, 669 F.2d 903 (3d Cir. 1982).

■ Not surprisingly, in order to circumvent the exhaustion requirement, plaintiff argues that the Act "clearly and unambiguously" violates the Fifth and Seventh Amendments. Defining a "clear and unambiguous" violation is, of course, a difficult task. One court has held that in order to come within the "extraordinarily narrow" exception to the exhaustion doctrine, plaintiff must show that the challenged law is "patently at variance" with secured rights. *American Federation of Government Employees v. Resor*, 442 F.2d 993, 995 (3d Cir. 1971). Another court within this Circuit has held that the "clear and unambiguous" standard is met where plaintiff shows that the alleged violation "merit[s] a decision to enter judgment . . . as a matter of law". *Lower Alloways Creek Township v. United States Nuclear Regulatory Comm.*, 481 F.Supp. 443, 450 (D.N.J.1979). In yet another case, the court tested the "sufficien[cy]" of plaintiff's allegations. *First Jersey Securities, Inc. v. Bergen*, 605 F.2d 690, 697 (3d Cir. 1979).

■ Whether plaintiff's allegations bring it within the articulated exception to the exhaustion requirement mandates reference to the Act and plaintiff's claim thereunder. Our approach is guided by the following inquiry: Do plaintiff's claims reveal a statutory scheme "patently at variance" with or "clearly and unambiguously" in violation of constitutional rights? If they do not, initial resort to non-judicial remedies is appropriate.

We turn now to the allegation that the statute impermissibly authorizes a pre-hearing seizure of plaintiff's assets. Plaintiff argues that the statutory requirement that it make installment payments approaching $10,500 per month while simultaneously submitting its claim to arbitration violates notions of due process as articulated in *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). Specifically, plaintiff's obligation to pay installments on the claim while litigating the ultimate amount thereof purportedly offends due process in that plaintiff's property is "seized" prior to an adjudication by the arbitrator. This argument falls in the wake of the Third Circuit's decision in *Bethlehem Steel Corp. v. Environmental Protection Agency, supra*, which rejected plaintiff's challenge to a "pay as you litigate" statute for failure to exhaust non-judicial remedies. The instant case presents facts which are far less compelling than those which existed in *Bethlehem Steel*, wherein plaintiff had to pay a statutory *penalty* while contesting defendant's action. In sharp contrast, plaintiff here faces no penalty; i.e., no acceleration of the amount claimed while proceeding in arbitration. In fact, arbitration shields it from the penalty of acceleration. Continuing, plaintiff also complains that there is no requirement for a prompt "post-seizure" determination and that it is in any case doubtful that one can be had since complex factual and legal issues will dominate and extend the arbitration proceeding. *Cf. Chrysler Corp. v. Fedders Corp.*, 670 F.2d 1316 (3d Cir. 1982) (Rejecting a similar argument made in an attack on New Jersey's *lis pendens* statute, the court observed that an expeditious post-filing hearing to determine the validity of the claim was unrealistic due to complex factual and legal issues involved in making that decision.)

■ Consideration of whether a statutory scheme violates due process requires consideration of three factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and, finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–903, 47 L.Ed.2d 18 (1976). Where a dispute involves private parties in a creditor-debtor relationship, the relevant inquiry centers on whether the statute provides for a "constitutional accommodation" of the parties' conflicting interests. *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 607, 94 S.Ct. 1895, 1900, 40 L.Ed.2d 406 (1974). As the Third Circuit recently observed,

notice and an opportunity to be heard before an attachment are not absolutely necessary. However, the available procedures must afford the debtor adequate protection against erroneous or arbitrary seizures. The procedural protection is adequate if it represents a *fair accommodation* of the respective interests of creditor and debtor.

*Finberg v. Sullivan*, 634 F.2d 50, 58 (3d Cir. 1980) (en banc) (emphasis added). *See generally, Solitron Devices, Inc. v. United States*, 537 F.2d 417, 423 (Ct.Cl.1976), *cert. denied*, 430 U.S. 930, 97 S.Ct. 1548, 51 L.Ed.2d 773 (1977). We must, therefore, consider the competing interests, both public and private in passing upon this statute. In so doing we seek to discern whether MPPAA provides for a "fair accommodation" of the competing interests.

Both plaintiff and defendant assert private interests. Plaintiff argues that payment of the monthly installments unduly burdens its ability to continue operations.

Moreover, should plaintiff decline to submit to the arbitration process, which it considers inherently unfair, defendant may accelerate the payment schedule and demand the full $850,000.

Defendant, on the other hand, argues that the continued existence of Republic, an entity with a net worth of over $8,200,-000.00, is not seriously jeopardized by the monthly payment schedule. *See Chrysler Corp. v. Fedders Corp., supra* (noting that both the scope and kind of deprivation suffered by a large corporation through a similar "seizure" is less severe than that which exists in other creditor-debtor cases.) Further, defendant properly argues that if Republic submits to the arbitration, the payments cannot be accelerated. Defendant also points out that it is the trustee of a multiemployer pension fund with existing unfunded liabilities. Failure to collect Republic's withdrawal liability will require other employer members to fund Republic's liabilities. This unhappy result could lead to additional burdens being placed upon those who may not be able to shoulder them.

■ Consideration of the second factor, the risk of erroneous deprivation and the probable value of additional safeguards, requires reference to the manner by which a withdrawing employer's liability is assessed and, importantly, whether additional procedural safeguards should be available.

■ The statute provides that when a "complete withdrawal" from a multiemployer pension fund occurs, as defined by 29 U.S.C. § 1383, the employer is subject to "withdrawal liability", which is an allocatable share of the unfunded vested benefits of the multiemployer fund, 29 U.S.C. § 1381(a). Generally, a "complete withdrawal" occurs whenever an employer permanently ceases to have an obligation to contribute to the fund as a consequence of its cessation of business. Exemptions abound, however, and are contained in the statute. For example, 29 U.S.C. § 1383(d) provides that an employer who contributes to a fund which derives "substantially all" its contributions from employers "primarily engaged" in the "long and short haul trucking industry, the household goods moving industry, or the public warehousing industry" will not have effected a "complete withdrawal", thereby incurring liability, unless the PBGC determines that the fund has suffered "substantial damage" to its contribution base.

The statute also allows the Fund to choose any one of four ways of calculating an employer's withdrawal liability, 29 U.S.C. § 1391. The method here employed by the Fund in determining plaintiff's liability allocates the unfunded vested benefits of the Fund to Johnson in proportion to the amount which Johnson's contributions to the Teamsters Fund over the last six years bear to the total contributions received by the Fund from all contributing employers over that time period who remained contributors after April 28, 1980.

Once an employer's withdrawal liability is calculated, the statute then requires the Fund to notify the employer of the amount of the liability, establish a schedule for its payment, and demand payment in accordance with the schedule, 29 U.S.C. § 1382. If the withdrawing employer fails to make a payment when scheduled by the Fund, interest at prevailing market rates accrues on the payment from its due date until paid. 29 U.S.C. § 1399(c)(3). Moreover, if the default is not cured within sixty (60) days after written notice of nonpayment is received from the Fund, the Fund may declare the full amount of the liability immediately due and assess an interest penalty thereon at prevailing market rates from the due date of the first payment not made. 19 U.S.C. § 1399(c)(5).

If the employer disputes the fact or amount of the liability due, the statute requires that the dispute be submitted to compulsory arbitration. 29 U.S.C. § 1401. The statute expressly directs that payments must be made by the employer as scheduled by the Fund pending the outcome of the arbitration, 29 U.S.C. § 1401(d), and that the Fund may not accelerate payments pending the outcome of arbitration.

■ Plaintiff assails this scheme and asserts that the risk of an erroneous depri-

vation is so severe as to warrant a declaration *at this stage* that the Act is unconstitutional. We disagree. Plaintiff's theory is that the lack of a statutory definition of designated words, e.g. "substantially all" as used in 29 U.S.C. § 1383(d), fails to provide sufficient guidance to actuaries and others who compute employer withdrawal liability. However, this constitutional argument is premature since the perceived harm can be addressed and remedied by the arbitrator pursuant to 29 U.S.C. § 1401(a)(3)(B), thereby mooting constitutional issues. *See Aircraft & Diesel Equipment Corp. v. Hirsch*, 331 U.S. 752, 772–73, 67 S.Ct. 1493, 1503, 91 L.Ed. 1796 (1947). Moreover, the fact that the statute places the burden of proof on the withdrawing employer to affirmatively prove by a preponderance of evidence that the actuarial assumptions employed by the pension fund were unreasonable, comports with the normal procedure of placing the burden of proof upon those who initiate the action. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

 Governmental interest, the third factor for consideration, is not strongly implicated. Suffice it to say that the government generally has an interest in supporting and fostering statutory schemes which relieve court congestion and permissibly nurture security for its retired citizens.

We turn now to plaintiff's argument that the statute improperly delegates public adjudicative functions to a private arbitrator who, presiding over a hearing structurally biased against plaintiff, lacks sufficient guidance by virtue of a vague and ambiguous statute. This contention, tested against the "clear and unambiguous" and "patently at variance" with constitutional norms standard, also fails.

Congress frequently delegates adjudicative functions to public agencies such as the Occupational Safety & Health Administration (OSHA), the Environmental Protection Agency (EPA) and others. The parties do not dispute the propriety of such delegations. Here, however, plaintiff argues that the statutorily mandated arbitration amounts to an unconstitutional delegation

of adjudicative power to a private entity, i.e., an arbitrator not affiliated with a statutorily created agency. Additionally, plaintiff argues that the most frequently cited reasons for requiring exhaustion of administrative remedies, the existence of an administrative agency with expertise and familiarity of the challenged Congressional enactment, is lacking in the case at bar.

The propriety of delegating public adjudicative or rule-making functions to private parties and institutions has been addressed by numerous courts. For example, in *New Motor Vehicle Board v. Orrin W. Fox Co.*, 439 U.S. 96, 109, 99 S.Ct. 403, 411–412, 58 L.Ed.2d 361 (1978) the Supreme Court upheld a California statute which governed the establishment or relocation of car dealerships. The challenged statute permitted existing franchisees to object to the new market entrant and, thereby, delay additional competition.

The court rejected a challenge that the legislation impermissibly delegated state power to private citizens even though an existing franchisee's objection delayed, without a hearing, the ability of a would-be franchisee to enter the market. *Id.* at 108–09, 99 S.Ct. at 411–412. *See also Noblecraft Industries, Inc. v. Secretary of Labor*, 614 F.2d 199, 203 (9th Cir. 1980); *National Association of Independent Telephone Producers and Distributors v. Federal Communications Commission*, 516 F.2d 526, 541 (2nd Cir. 1975).

 Courts, considering allegations of an improper delegation to private parties, inquire into the objects sought to be accomplished by the challenged statute and the degree of discernible standards that the Congress has delineated. Where the desired goal is a proper one and the private authority operates within constitutionally required procedures, the Congressional enactment will not be disturbed. *Crain v. First National Bank of Oregon, Portland*, 324 F.2d 532, 537–38 (9th Cir. 1963). In the case at bar, the Congressional goal is a proper one; it is to fortify and maintain the financial integrity of multiemployer pension funds. The guidance which the arbitrator

receives from the statute and the specific procedures employed by the arbitrator are not so vague as to render MPPAA constitutionally infirm.

For example, PBGC has adopted, as an interim measure, rules of the American Arbitration Association and has stated that they will control arbitration procedures.[1] Those rules provide for the selection of an impartial, qualified arbitrator to preside over the stenographically recorded hearing. Parties who so desire are represented by counsel; witnesses testify under oath and are subject to the rigors of cross-examination. Although the Federal Rules of Evidence do not strictly govern the introduction of evidence, the arbitrator is, nevertheless, required to initially judge the materiality and relevancy of the evidence. At the conclusion of the hearing, counsel are invited to submit briefs in order to aid the arbitrator in making his decision within the mandatory thirty-day period. Finally, the arbitrator's award must be written and supported by findings of fact.

█ Plaintiff contends, however, that the Act's allocation of proof requires, in reality, that the arbitrator rubber-stamp the Fund's demand. The burden of proof which rests upon plaintiff at the arbitration proceeding is to prove by a preponderance of the evidence that the demand was unreasonable or clearly erroneous. See 29 U.S.C. § 1401(a)(3)(A). Moreover, in proving that the Fund's demand and the actuarial assumptions upon which it is predicated are erroneous, an employer bears the burden of showing their unreasonableness in the "aggregate" or by proving a significant error. See 29 U.S.C. § 1401(a)(3)(B)(i) and (ii). The presumption of correctness which attaches to the Fund's demand is particularly offensive, plaintiff reasons, because it is prepared under the direction of the Fund's trustees, two of whom represent employers and have an interest in maintaining the integrity of the Fund while keeping their own contributions thereto as small as possible. But see N.L.R.B. v. Amax Coal Co., 453 U.S. 322, 101 S.Ct. 2789, 69 L.Ed.2d

672 (1981) (employer trustees owe a fiduciary duty to the trust fund).

These mere allegations of structural bias: private, interested parties proceeding against plaintiff in a constitutionally offensive forum which "stacks the deck", do not rise to the level of a clear and unambiguous constitutional violation justifying circumvention of the statutorily mandated remedies. In sustaining a statutory scheme similar to the one at bar, the Third Circuit noted that upholding plaintiff's contentions would "destroy the valuable congressional schemes for self-regulation". First Jersey Securities, Inc. v. Bergen, 605 F.2d at 698. Plaintiff attempts to distinguish First Jersey Securities by arguing that there the Securities and Exchange Commission (SEC) had the authority to make a de novo review of the private agency's action while here, no official agency has such power. Plaintiff urges that since the inter-agency layers of protective review which insured against private abuses in First Jersey Securities are not present here, the statute is unconstitutional.

█ We are not persuaded by this distinction. First, as the First Jersey Securities court noted, the principles of exhaustion are "particularly apt" when applied to a claim of bias since such an allegation is "usually controverted". 605 F.2d at 699.

Moreover, and importantly, far from "stacking the deck" against plaintiff, the statute provides a real and effective means for challenging the arbitrator's award. Courts traditionally review agency proceedings with an eye toward determining whether the findings are supported by substantial evidence on the record as a whole. Universal Camera Corp. v. NLRB, 340 U.S. 474, 487–91, 71 S.Ct. 456, 464–466, 95 L.Ed. 456 (1951); National Labor Relations Board v. National Car Rental System, Inc., 672 F.2d 1182, 1186 (3d Cir. 1982). In sharp contrast to this standard, an arbitrator's award under MPPAA is accorded substantially less deference. The award creates only a rebuttable presumption which may be upset by a "clear preponderance of the

---

1. Bureaucratic tensions and delays have apparently forced PBGC to adopt interim measures.

evidence". *See* 29 U.S.C. § 1401(c). True, *First Jersey Securities* turned aside a constitutional attack and articulated as a reason for doing so, the fact that the SEC had *de novo* review powers of the private decision-maker's conclusion prior to a court challenge. Once that review was made, however, the court could upset the decision only in rare circumstances. In the instant situation, there is no *de novo* review undertaken by an agency. Here, the Court's review of the arbitrator's decision is, therefore, relatively non-deferential. This is because the non-judicial procedures are not statutorily as complete as exist in more "traditional" "agency" proceedings. However, the non-judicial remedies appear to provide for a fair and reasonable accommodation of the parties' competing rights in an unbiased forum. *See, Chung v. Park*, 514 F.2d 382, 386 (3d Cir. 1975) (Due process is "protean in nature" and "depends upon appropriate accommodation of the competing interests involved".) The Court's review of that accommodation, once made, permits reversal upon a showing that the arbitrator's award is not supported by a "clear preponderance" of the evidence and that it is erroneous. Should plaintiff believe, *after* proceeding to arbitration, that it has suffered a constitutional deprivation, it may thereafter raise constitutional issues in the district court. For present purposes, since the Act is not patently at variance with the constitution, we will require plaintiff to follow its mandate.

■■■■ Plaintiff also challenges the retroactive application of the Act. At the very threshold it must be observed that legislation which adjusts the burdens and benefits of economic life comes to the Court with a presumption of constitutionality and that the burden is on the party complaining of a due process violation to establish irrational and arbitrary legislative conduct. *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). Moreover, legislation readjusting rights and burdens is not unlawful solely because it "upsets otherwise settled expectations". *Id.* at 16, 96 S.Ct. at 2893.

Plaintiff primarily relies upon *Railroad Retirement Board v. Alton*, 295 U.S. 330, 55 S.Ct. 758, 79 L.Ed. 1468 (1935) where the Supreme Court invalidated, on constitutional grounds, a federally imposed compulsory retirement and pension system for all carriers subject to the Interstate Commerce Act. In striking down the Act, the court found that it imposed liability to pay again for services long since rendered and fully compensated. *Id.* at 354, 55 S.Ct. at 764.

■■■■ The question for decision here is whether MPPAA allocates the burden of insuring the fiscal integrity of multiemployer funds in a rational, non-arbitrary manner. The House Labor and Education Committee, in considering MPPAA, noted "defects in existing law" with regard to withdrawals by employers from multiemployer funds. In order to remedy this problem, the Act's "primary purpose" seeks to "protect retirees and workers who are participants in such plans against the loss of their pensions." To do so, the Act fosters plan "continuation and growth" by providing participants and beneficiaries with the "greatest security against benefit loss". U.S.Code Cong. & Ad.News (1980) 2918, 2919. The legislation also seeks to remedy some of the "inequitable and disfunctional" aspects of prior law which existed by virtue of the fact that employers who withdrew from a plan early were rewarded, while employers who remained were penalized. Additionally, there was no provision for compensation to a plan upon employer withdrawal. U.S.Code Cong. & Ad.News at 2928.

MPPAA's "broad outline" promotes "benefit security through melioration of the financial condition of the multiemployer plans [and] the elimination of incentives for plan termination". An element of this comprehensive statutory scheme is to require employers who withdraw from a multiemployer fund to continue to fund their *"fair share* of the plan's unfunded pension benefits". U.S.Code Cong. & Ad.News at 2921–22 (emphasis added).

Contrary to plaintiff's argument that MPPAA requires employers to shoulder the entire statutory burden which benefits solely the plan and its employees, the Act per-

mits multiemployer plans in "financial distress" to reduce benefit levels to retirees in order to prevent insolvency.

Hence, we conclude that the Act strikes a reasonable, rational, non-arbitrary and constitutional balance in the allocation of its benefits and burdens.

■ Moreover, a number of courts have considered and approved the retroactive application of ERISA's imposition of withdrawal liability on employers. *See e.g., A–T–O, Inc. v. Pension Benefit Guaranty Corp.*, 634 F.2d 1013, 1024–26 (6th Cir. 1980); *Pension Benefit Guaranty Corp. v. Ouimet Corp.*, 630 F.2d 4, 12 (1st Cir. 1980); *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 592 F.2d 947, 959 (7th Cir. 1979), *aff'd on other grounds*, 446 U.S. 359, 100 S.Ct. 1723, 64 L.Ed.2d 354. Plaintiff's reliance on *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978) is misplaced since the court's holding there is grounded in Constitutional Contract Clause considerations, which have not been raised in the case at bar. Where retrospective application of Congressional action does not amount to a clear and unambiguous violation of constitutional standards, exhaustion is required.

■ Plaintiff's argument that there is a "taking" in violation of the Fifth Amendment's guarantee is grounded upon its assertion that it is required to insure the pension benefits to Johnson's former employees, members of the public which it, plaintiff, never employed. Plaintiff suggests a "uniform tax, binding on all" as an appropriate means to reach the desired goal of fiscal integrity for multiemployer funds. However, we think that the holdings of *A–T–O, Inc. v. Pension Benefit Guaranty Corp.; Pension Benefit Guaranty Corp. v. Ouimet Corp.*, and *Nachman Corp. v. Pension Benefit Guaranty Corp., supra*, all implicitly considered and rejected this issue.

■ Finally, plaintiff's argument that the Act unconstitutionally deprives it of a jury trial need not detain us long; the Seventh Amendment's guarantee extends only to suits for claims which existed at common law. Moreover, initial resort to mandated, non-judicial remedies does not offend the aegis of the Seventh Amendment. *Atlas Roofing Co. v. Occupational Safety and Health Review Comm.*, 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977). This is true because the Seventh Amendment is generally not implicated in administrative proceedings as a jury trial is inconsistent with the concept of administrative adjudications. *Curtis v. Loether*, 415 U.S. 189, 194, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974). The *Curtis* court observed that

> when Congress provides for enforcement of statutory rights in an ordinary civil action *in the district courts* ... there is obviously no functional justification for denying [a] jury trial ...

*Id.* at 195, 94 S.Ct. at 1009 (emphasis added). Here, of course, Congress has provided for just the opposite. Rather than permit enforcement of statutory rights in the district courts, Congress has required initial resort to non-judicial remedies. Since that direction does not patently offend the Seventh Amendment, we must honor it.

Upon careful consideration of the matters at bar, we conclude only that the challenged provisions of the Act are neither patently at variance with, nor clearly and unambiguously in violation of, constitutional requirements. Hence, plaintiff's failure to exhaust statutory remedies cannot be excused. Accordingly, we will enter an order denying plaintiff's motion for preliminary relief and granting defendant's motion to dismiss the plaintiff's complaint. This conclusion also renders moot plaintiff's alternative motion to strike.