**A. SOLOFF & SON, INC., Plaintiff,**

v.

**Jerry ASHER, et al., Defendants.**

**No. 82 Civ. 1981(MEL).**

United States District Court,
S.D. New York.

March 19, 1985.

Hill & Barlow, Boston, Mass., and Kieffer & Hahn, New York City (John M. Kahn, Robert G. Dreher, Jeanne M. Kempthorne, Boston, Mass., Michael C. Devine, New York City, of counsel), for plaintiff.

Mark Schwartz, New York City, for defendants.

LASKER, District Judge.

A. Soloff & Son, Inc. ("Soloff") sues the Trustees of the Amalgamated Cotton Garment and Allied Industries Fund ("the Fund"), challenging the Fund's claim of withdrawal liability asserted under the Employment Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. § 1001 *et seq.* as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("the MPPAA" or "the Act") 29 U.S.C. § 1381 *et seq.* Soloff moves for summary judgment challenging the constitutionality of the MPPAA on several grounds. The Fund cross-moves for summary judgment on its counterclaim that, because plaintiff Soloff failed to request arbitration within the time limit set by the Act, *see* 29 U.S.C. § 1401(a)(1), it is subject to withdrawal liability under the MPPAA. 29 U.S.C. § 1381 *et seq.*

In two earlier decisions, we held that Soloff had not sought timely arbitration under the Act, 583 F.Supp. 1098 (S.D.N.Y. 1984), and that the Act's 60-day time limit specified for arbitration, 29 U.S.C. § 1401(a)(1), was not unconstitutional. 594 F.Supp. 724 (S.D.N.Y.1984). We reserved decision on Soloff's motion challenging the constitutionality of the MPPAA, pending the Supreme Court's determination of such questions in *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* —— U.S. ——, 104 S.Ct. 992, 79 L.Ed.2d 226, (1984). In *R.A. Gray,* the Supreme Court addressed some constitutional questions, upholding the constitutionality of the MPPAA's retrospective imposition of withdrawal liability upon multiemployer plan participants. The Court left unresolved, however, a number of issues raised by Soloff's motion which we now consider. For the reasons set forth below, we conclude, as did the Su-

preme Court, that the MPPAA is not unconstitutional.

## I.

Soloff was a Massachusetts clothing manufacturer which was obligated by a collective bargaining agreement with Local 177 of the Amalgamated Clothing and Textile Workers Union ("the Union") to make employer contributions to the Fund, a multiemployer pension plan fund. In January 1980 Soloff decided to discontinue its outerwear manufacturing operations and by September 1980 its decision to terminate its business was economically irrevocable. By November 1980 Soloff ceased operating and withdrew from the Fund as a contributing employer.

■ The MPPAA was enacted on September 26, 1980 and requires all withdrawing participants in multiemployer pension plans to pay a "withdrawal liability", that is, a proportionate share of their unfunded vested liability,[1] to the Fund. 29 U.S.C. § 1381 et seq.[2] In November 1981 the Fund notified Soloff that it was in default and demanded payment under the MPPAA's installment provisions within sixty days, after which time the Fund would seek to enforce the MPPAA's acceleration provisions. 29 U.S.C. § 1399(c)(5).[3]

In the aftermath of the Supreme Court's decision in R.A. Gray, supra, Soloff challenges the constitutionality of the MPPAA alleging that: (1) the MPPAA constitutes a taking of Soloff's property without due process of law in violation of the Fifth Amendment; (2) the MPPAA violates the Seventh Amendment by depriving Soloff of its right to a jury trial; and (3) the MPPAA violates the equal protection clause of the Fifth Amendment.[4]

## II.

### A.

■ Soloff argues that the MPPAA violates its due process rights in a number of ways. It contends first that the Act constitutes a taking of its property in violation of the Fifth Amendment, by abrogating its collective bargaining agreement with the Union which limited its obligations to contribute to the Fund, and by authorizing the Fund to appropriate more than one-third of Soloff's net worth for a public purpose.[5]

The Seventh Circuit considered and rejected a similar Fifth Amendment claim in Peick v. Pension Benefit Guaranty Corp.,

1. A plan's "vested liability" is the actuarial present value of the benefit obligations which have vested. The difference between this amount and the value of the plan's assets is called its unfunded vested liability. See Peick v. Pension Benefit Guaranty Corp., 724 F.2d 1247, 1255–56 (7th Cir.1983). An employee's right to collect a pension benefit is "vested" when it survives a pre-retirement termination of employment. See Nachman Corp. v. Pension Benefit Guaranty Corp., 446 U.S. 359, 363–64, 100 S.Ct. 1723, 1727, 64 L.Ed.2d 354 (1980).

2. 29 U.S.C. § 1381 in pertinent part provides:
(a) If an employer withdraws from a multiemployer pension plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability.
(b) For purposes of subsection (a) of this section—
(1) The withdrawal liability of an employer to a plan is the amount determined under section 1391 of this title to be the allocable amount of unfunded vested benefits,....

3. 29 U.S.C. § 1399(c)(5) provides:
(5) In the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made....

4. Following the Supreme Court's decision in Pension Benefit Guaranty Corp. v. R.A. Gray & Co., supra, we granted by endorsement the Fund's motion for summary judgment. After the Fund moved for a final judgment, however, Soloff requested that judgment be deferred, pending resolution of the three outstanding constitutional issues identified in Soloff's letter dated November 5, 1984.

5. Soloff claims that the contractual rights arising from its collective bargaining have long been recognized as constituting property rights protected by the Fifth Amendment. See e.g., Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Lynch v. U.S., 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934).

724 F.2d 1247 (7th Cir.1983). It held that the contractual rights of employers are not analogous to the type of rights in specific property protected under the takings clause. *Id.* at 1276. Moreover, the Second Circuit Court of Appeals, while using a due process analysis, is in accord with this conclusion. *See Textile Workers Pension Fund v. Standard Dye & Finishing Co., Inc.,* 725 F.2d 843, 857–58 (2d Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 3554, 82 L.Ed.2d 856 (1984); *see also Fur Manufacturing Industry Retirement Fund v. Lazar-Wisotzky, Inc.,* 550 F.Supp. 35, 3 Empl. Ben.Cas. (BNA) 1977, 1979 (S.D.N.Y.1982). We find the *Textile* and *Peick* decisions dispositive of this argument and deny Soloff's motion of this ground.

### B.

█ Soloff also claims that the MPPAA violates due process by requiring payment of withdrawal liability before any hearing has been held and before anyone other than the Fund itself has made any finding of liability. Under the statute, however, an employer is permitted to furnish the plan with additional information or point out inaccuracies in the Fund's determination of liability. *See* 29 U.S.C. § 1399(b)(2)(A).[6] Once the Fund is notified of such matter, it must undertake a "reasonable review" of such information and notify the employer of its decision, the grounds for its decision, and the reason for any modification in the employer's withdrawal liability. *See* 29 U.S.C. § 1399(b)(2)(B).[7] Any dispute between Soloff and the Fund concerning a determination made by the Fund of Soloff's withdrawal liability under the Act is required to be resolved first through arbitration. *See* 29 U.S.C. § 1401(a)(1).[8] If Soloff had invoked its right to arbitrate, upon completion of the arbitration proceedings either Soloff or the Fund could have come to the district court to enforce, vacate or modify the arbitrator's award. *See* 29 U.S.C. § 1401(b)(2).[9]

The Court of Appeals for this Circuit in *Textile, supra,* found that the statutory scheme afforded the employer an opportunity to present its position, that the Act therefore was rational, and that it did not violate the employer's right to due process of law. *Id.,* 725 F.2d at 854, *citing, Mathews v. Eldridge,* 424 U.S. 319, 349, 96 S.Ct. 893, 909, 47 L.Ed.2d 18 (1976); *see also Fur Manufacturing Industry Retirement Fund v. Lazar-Wisotzky, supra,* 550 F.Supp. 35, 3 Empl.Ben.Cas. (BNA) at 1979; *Ells v. Construction Laborers Pension Trust,* 539 F.Supp. 867, 3 Empl.Ben.Cas. (BNA) 1449 (C.D.Cal.1982); *Republic Industries v. Central Pennsylvania Teamsters Pension Fund,* 534 F.Supp. 1340

---

**6.** 29 U.S.C. § 1399(b)(2)(A) provides that within 90 days of receiving the plan sponsor's notice of withdrawal liability, an employer:
  (i) may ask the plan sponsor to review any specific matter relating to the determination of the employer's liability and the schedule of payments.
  (ii) may identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer, and
  (iii) may furnish any additional relevant information to the plan sponsor.

**7.** 29 U.S.C. § 1399(b)(2)(B) provides:
  (B) After a reasonable review of any matter raised, the plan sponsor shall notify the employer of—
  (i) the plan sponsor's decision,
  (ii) the basis for the decision, and
  (iii) the reason for any change in the determination of the employer's liability or schedule of liability payments.

**8.** 29 U.S.C. § 1401(a)(1) provides:

(1) Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration. Either party may initiate the arbitration proceeding within a 60-day period after the earlier of—
  (A) the date of notification to the employer under section 1399(b)(2)(B) of this title, or
  (B) 120 days after the date of the employer's request under section 1399(b)(2)(A) of this title.

**9.** 29 U.S.C. § 1401(b)(2) provides:

(2) Upon completion of the arbitration proceedings in favor of one of the parties, any party thereto may bring an action, no later than 30 days after the issuance of an arbitrator's award, in an appropriate United States district court in accordance with section 1451 of this title to enforce, vacate or modify the arbitrator's award.

(E.D.Pa.1982). The *Textile* decision is dispositive, and Soloff's motion based on this argument is denied.

### III.

■ Soloff also claims that the Act violates the Seventh Amendment right to a jury trial. Soloff argues that this is a common law action between two private parties to establish "the liability of one individual to another" to which the Seventh Amendment is fully applicable. The *Textile* court rejected a similar Seventh Amendment challenge, concluding that the rights and remedies under the MPPAA were not typically enforceable in an action at law and that it was within the prerogative of Congress to vest fact finding in a tribunal other than a jury. *See Textile, supra,* 725 F.2d at 855, *citing, Atlas Roofing Co. v. Occupational Safety & Health Review Commission,* 430 U.S. 442, 458–61, 97 S.Ct. 1261, 1270–72, 51 L.Ed.2d 464 (1977); *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 48–49, 57 S.Ct. 615, 629, 81 L.Ed. 893 (1937); *accord, Peick v. Pension Benefit Guaranty Corp., supra,* 724 F.2d at 1277. The Seventh Amendment's right to a jury trial does not apply to the statutory scheme of the MPPAA and we deny Soloff's motion for summary judgment on this ground as well.

### IV.

■ Finally, Soloff alleges that the Act violates equal protection principles by arbitrarily and irrationally imposing greater burdens upon contributors to multiemployer pension plans, such as Soloff, than upon contributors to single-employer plans, and by arbitrarily and irrationally appropriating Soloff's property for the benefit of Fund contributors who remain as plan participants.

Soloff first claims that the Fund's assessment of withdrawal liability exceeds 35% of plaintiff's net worth, and that this is 5% more than the maximum withdrawal liability imposed upon single-employer plan contributors. Soloff also claims that the Act's "presumptive method" [10] used to calculate its withdrawal liability amounts to a windfall to those employers who have remained in the Fund by directly reducing their obligations.

The legislative history of the MPPAA suggests that Congress recognized the need for this expanded obligation because withdrawals from multiemployer plans unfairly burden the remaining plan contributors with unfunded benefit obligations left behind by the withdrawn employer. *See* H.R.Rep. No. 869, Part I, 96th Cong., 2d Sess. 60, *reprinted in,* 1980 U.S.Code Cong. & Ad.News 2918, at 2928; *see also Textile Workers Pension Fund v. Standard Dye & Finishing Co., supra,* 725 F.2d at 856–57. The district court in *Peick v. Pension Benefit Guaranty Corp.* considered a similar equal protection claim, and determined that Congress, relying on the Pension Benefit Guaranty Corporation Multiemployer Study Required by P.L. 95–214 (1978), had concluded that the potential exposure of the multiemployer insurance system was unacceptably large, and so adopted "rational" measures designed to neutralize those threats. *Id.,* 539 F.Supp. 1025, 1056–59 (N.D.Ill.1982). As did Judge Sand in *Fur Manufacturing, supra,* 550 F.Supp. 35, 3 Empl.Ben.Cas. (BNA) at 1978, we find the *Peick* opinion analytically complete and persuasive on this issue. We agree with the *Textile* decision which reached the same conclusion as in *Peick,* though treating the matter in less detail, that the MPPAA is not unconstitutional and deny Soloff's motion on this ground.

For the foregoing reasons, plaintiff's motion for summary judgment is denied. The complaint is dismissed. Defendants' motion for summary judgment on the counter-

---

**10.** Under the "presumptive method" of section 1391(b), the liability is derived by multiplying the plan's aggregate unfunded vested liability by a fraction, the numerator of which is the sum of all contributions required to have been made by the withdrawing employer during the previous five years. The denominator is the sum of all contributions made by all the employers during this same period. *See Peick, supra,* 724 F.2d at 1256.

claim is granted. Submit judgment on notice.

It is so ordered.